THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM GARDNER, Defendant-Appellant.

Fourth District    No. 16692

Opinion filed July 14, 1981.

Jennings & Thompson, of Bloomington, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and James K. Horstman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant, William Gardner, appeals judgments of the circuit court of McLean County (1) entered on a jury verdict on July 21, 1980, finding him guilty of deviate sexual assault (Ill. Rev. Stat. 1979, ch. 38, par. 11—3) and unlawful restraint (Ill. Rev. Stat. 1979, ch. 38, par. 10—3), and (2) sentencing him on September 12, 1980, to 6 years' imprisonment for the sexual assault. No sentence was imposed for the unlawful restraint conviction. He appeals, asserting that he raised the insanity defense and the State failed to prove beyond a reasonable doubt that he was sane at the time of the offenses.

The testimony of the female victim provided the substance of the evidence of the events giving rise to the offenses. She testified to the following sequences of events: She answered a newspaper advertisement for a secretarial position, went to defendant's apartment, and filled out an application form. He told her he was in the business of training attack dogs, and that if she accepted the job, she would have to go that night to his Las Vegas dog training center to begin her training. She accepted, went with defendant to a restaurant where he had an appointment, and then permitted him to take her to her home to pack for the trip. They next returned to defendant's apartment and listened to music while they awaited a limousine for the local airport. At that point, he attacked her with a knife and required her to disrobe but then had her dress again and prepare a dinner for them. When they had finished eating, he again forced her to disrobe and unsuccessfully attempted to have intercourse with her. He then forced her to perform an act of oral sex and told her that if she attempted escape, his dog would attack her. She stayed in his apartment overnight and through much of the next day until she escaped.

Defendant's mother testified that in 1973, defendant was employed by the United States Air Force to train attack dogs. During that year he was shot in the head by a burglar, causing him to be hospitalized for two months. She also claimed that his wounds caused him to be hospitalized intermittently for two years and to undergo approximately five brain operations.

Two physicians testified in support of defendant's insanity defense. The first, Dr. Downs, an internist, stated he had been treating defendant for two years, and that defendant suffered brain damage and epilepsy from the gunshot wound. The doctor testified that the brain damage severely impaired defendant's use of his right leg and arm. He evaluated defendant as having a psychopathic personality and as being unable to conform his conduct or actions to the requirements of the law.

The defense also called a psychiatrist, Dr. Harston, to the stand who testified that he had been treating the defendant for approximately 2½

years. The psychiatrist testified that the defendant was suffering from organic brain syndrome as a result of the shot to his head, and that the defendant was unable to appreciate the criminality of his conduct or control his conduct to the requirements of the law. However, Harston disagreed with Downs in that Harston did not believe the defendant had a psychopathic personality.

On cross-examination, Dr. Downs admitted that defendant would be able to restrain himself from antisocial acts at least temporarily. He testified that defendant did understand what conduct was expected of him but "as far as incorporating that known intellectual fact into his behavior that it does not have as great influence on him as it would others." Similarly, Dr. Harston's opinion of defendant's ability to control his behavior was less than certain. Although he stated that defendant was incapable of conforming his conduct to the requirements of law he admitted that he did not know if defendant would commit an offense in the presence of a policeman.

■■ The State presented no expert testimony to rebut that of the defendant. The State relied upon observations of defendant's conduct made by the victim and her then fiance both of which are discussed later.

Section 6—2(a) of the Criminal Code of 1961 provides:

"A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." (Ill. Rev. Stat. 1979, ch. 38, par. 6—2(a).)

Here, the evidence of defendant's insanity was directed mostly to his ability to "conform his conduct to the requirements of law." Most affirmative defenses are raised by the introduction of any evidence of the existence of the defense. The supreme court has held under section 6—2(a), as under prior legislation, that to raise the affirmative defense of insanity, the evidence "must raise a reasonable doubt as to an accused's sanity." (*People v. Redmond* (1974), 59 Ill. 2d 328, 338, 320 N.E.2d 321, 326.) The evidence here was clearly sufficient to raise a reasonable doubt of defendant's ability to conform, thus placing a burden upon the State to prove defendant's sanity beyond a reasonable doubt.

In *People v. Burress* (1971), 1 Ill. App. 3d 17, 272 N.E.2d 390, this court affirmed an arson conviction obtained at a bench trial where the insanity defense was raised with the evidence on that issue similar to the evidence here. The only medical testimony there was that of a psychiatrist who deemed the defendant to be unable to conform his conduct because he suffered from the disease of pyromania. There, as here, the medical testimony came from those who had been treating the defendant prior to the crime. Yet, in neither case had the doctors previously diagnosed either

defendant as being unable to conform his conduct to the requirements of law. There, the court deemed the evidence of the defendant's prior planning of the offense to support the verdict by tending to indicate that he did not act impulsively or compulsively.

Here, the defendant obviously acted after considerable planning. He placed an advertisement in a newspaper, obtained application forms and business cards and made arrangements for an interview with the victim. Although his conduct was bizarre, it did not appear to be either impulsive or compulsive.

Defendant attempts to distinguish *Burress* from this case upon the basis that there (1) the defendant's expert failed to discuss or analyze his opinions, and (2) that defendant's actions were inconsistent with the diagnosis. However, the *Burress* expert deemed defendant's condition to arise from his traumatic loss of his mother in childhood. In both cases, disparity between the doctors' diagnoses and defendants' actions existed because the defendants' conduct did not appear to be impulsive or compulsive but well planned.

In *People v. Young* (1978), 60 Ill. App. 3d 351, 376 N.E.2d 739, a judgment on a verdict of guilty was also affirmed although the only medical expert to testify was of the opinion that the defendant was insane at the time of the offense. The appellate court considered the doctor's testimony to contain a weakness and stated that the trier of fact was not obligated to accept the ultimate opinion of a psychiatrist. Here, Dr. Downs considered defendant to have a psychopathic personality. Section 6—2(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 6—2(b)) provides that "[t]he terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct." The jury could have considered Dr. Downs' diagnosis of defendant's mental condition to have been that which was not recognized as insanity by section 6—2. Dr. Harston admitted that defendant's compulsiveness was not so great that he would have committed an offense in the presence of a policeman.

The victim testified that during the extended period she was with defendant, she saw no evidence of defendant having the speech or motor difficulties attributed to him by his expert witnesses. Her fiance made the same observations of defendant's conduct during his limited contact with defendant. Similar observations of actions of an accused have been held to be of significance in upholding jury verdicts of guilty in the face of defense expert testimony of the defendant's insanity in *People v. Bloodworth* (1979), 68 Ill. App. 3d 341, 385 N.E.2d 904, and *People v. Lechner* (1976), 35 Ill. App. 3d 1033, 342 N.E.2d 820. This testimony taken with the evidence of the deliberate nature with which defendant acted made some affirmative showing of defendant's sanity. Because of that evidence, this

case differs from *People v. Skeoch* (1951), 408 Ill. 276, 96 N.E.2d 473, strongly relied upon by defendant. There, the undisputed expert opinion testimony that the defendant was insane was supported by all of the lay testimony of the mood and actions of the defendant at the time of the death of the child she was accused of murdering.

When the insanity defense has been raised in criminal cases, the determination of the trier of fact has been given considerable deference (*People v. Ward* (1975), 61 Ill. 2d 559, 338 N.E.2d 171) even when defense expert testimony is not countered by expert testimony for the State. (*Young; Burress.*) The evidence here supported a jury determination that defendant's sanity at the time of the offense had been proved beyond a reasonable doubt. We affirm.

Affirmed.

WEBBER and LONDRIGAN, JJ., concur.