THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WLADYSLAW CZYZ, Defendant-Appellant.

First District (5th Division)    No. 79-865

Opinion filed December 24, 1980.

Richard W. Stopka and Harry Missirlian, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Stein, and Timothy J. McKay, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial defendant was found not guilty by reason of insanity (Ill. Rev. Stat. 1977, ch. 38, par. 115—3) of the murders of Joseph Pustelinak and Helena Czyz and the attempted murder of Irene Marciniec. One week later in a hearing pursuant to section 5—2—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(a)), he was found in need of mental treatment and placed in the custody of the Department of Mental Health and Developmental Disabilities (hereafter the Department) for treatment on an out-patient basis. On appeal from that order, defendant contends that the State failed to prove by clear and convincing evidence that he was in need of mental treatment; that the trial court improperly considered evidence outside of the record in reaching its finding; and that he was denied due process and equal protection (U.S. Const., amend. XIV, and Ill. Const. 1970, art. I, §2), when he was committed to the Department without compliance with the procedural

requirements of the Illinois Mental Health Code. Ill. Rev. Stat. 1977, ch. 91½, par. 1 *et seq.*

On April 9, 1974, the grand jury indicted defendant for the murders of Joseph Pustelinek and Helena Czyz and the attempted murder of Irene Marciniec on March 2, 1974. The trial court on June 13, 1974, found him unfit to stand trial, and remanded him to the custody of the Department. Over three years later, on August 26, 1977, he was found fit to stand trial. A bench trial was held on October 31, 1977, and he was acquitted of all charges by reason of insanity. Seven days later, November 7, 1977, a hearing was commenced, pursuant to section 5—2—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(a)) to determine if defendant was in need of mental treatment.

Dr. Conrado J. Aramil, a licensed physician and psychiatrist, was called at the request of the trial court. While defendant was in the custody of the Department he was treated and examined by Dr. Aramil. Based on his latest examination of the defendant on November 2, 1977, Dr. Aramil concluded that defendant was "no longer in need of mental treatment in a hospital setting." He explained that defendant would need out-patient treatment in the form of "supportive therapy" during the period of his adjustment to life outside the hospital. In addition, Dr. Aramil stated that defendant should receive medication in the form of five milligrams of narvene. The medication would calm his nervousness and help defendant relax.

On examination by defense counsel, Dr. Aramil stated that defendant was not a danger to himself or to the community. Under examination by the State, Dr. Aramil explained what harm defendant might pose to the community in the future as follows:

"I think it all depends on the stresses he will meet subsequent to his discharge from the hospital. That's why essentially he needs some out-patient guidance, so he will be able to adjust in a more healthy and effective manner, or even avoid the same stresses he encountered before, which I think he is capable of avoiding or resolving if he were to be under some sort of guidance."

After the testimony of Dr. Aramil, the hearing was continued to the next day to allow the State's experts time to perform a current examination of defendant.

Dr. E. J. Kelleher, director of the Psychiatric Institute of the Circuit Court of Cook County, examined defendant on the morning of November 8, 1977. According to Dr. Kelleher, defendant was not in need of mental treatment and was not a danger to himself or others. He stated that defendant did not show "evidence of paranoid psychosis," but did have some distrustful traits. As recent as September 20, 1977, however, Dr.

Kelleher had found that defendant possessed sufficient "paranoid symptoms to render him in need of mental treatment."

The final witness, Dr. Frank M. Lorrimer, had examined defendant several times with the most recent examination taking place that morning, November 8, 1977. He stated that at the time of the criminal acts, March 2, 1974, defendant was suffering from a mental illness, schizophrenic paranoid, and was then in need of mental treatment. Based on his latest examination, however, Dr. Lorrimer diagnosed defendant as having a "paranoid personality." A person having a paranoid personality, according to Dr. Lorrimer, is "generally suspicious," "distrustful of his life situation," but "able to distinguish reality from unreality." Paranoid personality is not a mental illness. Therefore, Dr. Lorrimer stated that defendant was not in need of mental treatment and did not represent a danger to himself or others. Dr. Lorrimer added that it would be extremely beneficial for defendant to receive out-patient treatment, but he would not require it. Nor would he prescribe medication for defendant. Finally, when asked whether defendant had recovered from his mental illness, Dr. Lorrimer responded: "In psychiatry, we are rather adverse to that word [recovery] because recovery would imply completely, and there are few mental illnesses that ever recover completely."

After considering the above evidence, the trial court found that defendant was "in need of mental treatment in that he still suffers from a mental illness, to wit: schizophrenia paranoid though presently in a state of remission." Defendant was remanded to the custody of the Department, and the Department, under the trial court's order, was to develop a plan for out-patient treatment of defendant.

The hearing held in this case under section 5—2—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(a)) took place on November 7 and 8, 1977. This section was amended effective August 1, 1977. (Pub. Act 80-164, §1, eff. Aug. 1, 1977.) Since the hearing was conducted subsequent to the effective date of the amendment, this case is controlled by section 5—2—4(a) as amended. *People v. Valdez* (1980), 79 Ill. 2d 74, 402 N.E.2d 187.

Section 5—2—4(a) states:

"After a finding or verdict of not guilty by reason of insanity under Section 115—3, or 115—4 of The Code of Criminal Procedure of 1963, a hearing shall be held under the Mental Health Code of 1967 to determine whether the defendant is in need of mental treatment. If the defendant is found to be in need of mental treatment the court shall enter an order so specifying." (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(a).)

The term "in need of mental treatment" is defined by the Mental Health Code as follows:

> "[A]ny person afflicted with a mental disorder, not including a person who is mentally retarded, as defined in this Act, if that person, as a result of such mental disorder, is reasonably expected at the time the determination is being made or within a reasonable time thereafter to intentionally or unintentionally physically injure himself or other persons, or is unable to care for himself so as to guard himself from physical injury or to provide for his own physical needs." (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11.)

Thus, the State must prove that defendant presently suffers from a mental disorder and that it can be reasonably expected that defendant will harm himself or others, or is unable to care for himself. A finding that defendant is in need of mental treatment must be established by clear and convincing evidence. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(g); *People v. Turner* (1978), 62 Ill. App. 3d 782, 379 N.E.2d 377.) Also, the finding must be based upon an "explicit medical opinion regarding the [defendant's] future conduct, and can not be based upon a mere finding of mental illness." (*People v. Sansone* (1974), 18 Ill. App. 3d 315, 323, 309 N.E.2d 733, 739.) These rules have grown out of the legislature's and the courts' appreciation that at stake in these hearings is a person's liberty. We, of course, must guard against the unjustified and unreasonable confinement of an individual. See *In re Love* (1977), 48 Ill. App. 3d 517, 363 N.E.2d 21; *People v. Bradley* (1974), 22 Ill. App. 3d 1076, 318 N.E.2d 267; and *Sansone*.

Defendant maintains that the State has failed to prove by clear and convincing evidence that he is in need of mental treatment. The first question to be addressed is whether the trial court's finding that defendant suffers from a "mental illness, to wit: schizophrenia paranoid though presently in a state of remission," is supported by clear and convincing evidence. We note initially that none of the three witnesses provided this diagnosis of defendant. Although Dr. Aramil stated defendant was in need of mental treatment in the form of supportive therapy on an outpatient basis, he did not diagnose defendant as schizophrenic paranoid at the time of the hearing. Dr. Aramil, alone, stated that defendant was in need of mental treatment of any kind. Dr. Kelleher testified that defendant was not in need of mental treatment and did not show evidence of "paranoid psychosis." Dr. Kelleher did add that defendant had some "distrustful personality traits"; hardly a basis for commitment. Finally, Dr. Lorrimer also testified that defendant was not in need of mental treatment and did not suffer from a mental illness. Dr. Lorrimer did state that defendant had a paranoid personality, but he clearly explained that this term could not be considered a mental disorder. The expert testimony of these witnesses falls far short of establishing by clear and convincing evidence that defendant suffered from a mental disorder at the time of

the hearing, and therefore a finding "in need of mental treatment" cannot stand.

■■ The State has provided us with two arguments to support the trial court's finding of a mental disorder. First, the State maintains that the testimony of Dr. Kelleher and Dr. Lorrimer describing their previous opinions that defendant suffered from schizophrenic paranoid at the time of the criminal acts, and carried symptoms of that mental disorder as late as September 20, 1977, provides sufficient support for the trial court's order. Although this evidence is relevant to the determination to be made at this hearing, it alone is inconclusive because it involves only the defendant's prior condition. In these hearings, a defendant is entitled to a current evaluation of his state of mind, and a decision to commit must be based on defendant's present conduct and state of mind. *People v. Butler* (1979), 69 Ill. App. 3d 556, 387 N.E.2d 908.

■■ The State also relies on Dr. Lorrimer's statement that in the field of psychiatry very few persons are considered completely recovered from a prior mental illness. From this statement, the State contends that a finding of mental illness, supported by clear and convincing evidence, is possible. If this were so, there would be no need to conduct such hearings because all defendants found not guilty by reason of insanity could be considered as not having recovered from their mental disorder. This cannot be true. Again, this statement is relevant to the trial court's decision, but it cannot magically transform weak and inconclusive evidence into clear and convincing evidence. Consequently, we hold the evidence was insufficient to support the trial court's finding of a mental disorder.

The remaining element is whether there is clear and convincing evidence that defendant can be reasonably expected to harm himself or others, or is unable to care for himself. We note initially that the trial court's order holding that defendant was in need of mental treatment provides no finding on this element. The trial court did not find defendant to be a threat to himself or to others. Nor did the trial court find that defendant was unable to care for himself. All three witnesses testified that at the time of the hearing defendant did not represent a threat to himself or to the community. Given this evidentiary background, it can hardly be surprising that the trial court did not expressly find that defendant was a threat to himself or to others, or could not take care of himself.

■■ The State asserts that the testimony of Dr. Aramil provides sufficient support for a finding that defendant represented a threat to others. On examination by defense counsel, Dr. Aramil stated that at the time of the hearing defendant did not pose a threat to others. Under the prosecutor's questioning, however, Dr. Aramil elaborated on that question. Dr. Aramil stated:

"I think it all depends on the stresses he will meet subsequent to his

discharge from the hospital. That's why essentially he needs some out-patient guidance, so he will be able to adjust in a more healthy and effective manner, or even avoid the same stresses he encountered before, which I think he is capable of avoiding or resolving if he were to be under some sort of guidance."

This statement is not an "explicit opinion" that it can be reasonably expected that defendant will harm himself or others. (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11; *People v. Sansone* (1974), 18 Ill. App. 3d 315, 323, 309 N.E.2d 733, 739.) Instead, this statement merely describes, in general fashion, that defendant may encounter problems in readjusting to life outside the hospital. This statement does not even predict that defendant will resort to violence should he face such problems. Based on the particular facts of this case, there can be no finding, supported by clear and convincing evidence, that defendant could be reasonably expected to harm himself or others, or was unable to care for himself.

We hold that the trial court's finding that defendant was in need of mental treatment was not supported by clear and convincing evidence. Because of this conclusion, it is unnecessary to examine the remaining issues raised by defendant. Accordingly, the order of the circuit court of Cook County is reversed.

Reversed.

MEJDA and WILSON, JJ., concur.