THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EDDIE GAMBLE, Defendant-Appellant.

First District (2nd Division)   No. 82—370

Opinion filed August 23, 1983.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

The sole question presented by this appeal is whether defendant's equal protection rights were violated when he was involuntarily committed to a Department of Mental Health and Developmental Disabilities (Department) facility upon his acquittal of three counts of aggravated battery by reason of insanity. We affirm the circuit court's commitment order.

At trial, after jury waiver, stipulated evidence revealed that on March 26, 1981, defendant struck and kicked two paramedics and one police officer who were attempting to place him in an ambulance. That evidence further presented the conclusion of psychiatric examinations to the effect that defendant was legally insane at the time of the alleged offenses because he substantially lacked the capacity to appreciate the criminality of his acts and was unable to conform his

conduct to the requirements of the law. The court found that although defendant committed the acts charged, he was innocent by reason of insanity.

In accordance with section 5—2—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(a)), defendant was ordered to undergo an examination for purposes of determining whether he was subject to involuntary admission or in need of mental health services. Pursuant to his motion, defendant was examined by the Psychiatric Institute of the Circuit Court of Cook County rather than the Department. At a section 5—2—4(a) hearing, psychiatrist Robert Reifman, M.D., testified that on the day of examination, defendant was suffering from schizophrenia currently in remission, but was in need of mental health services on an inpatient basis. He had seen defendant previously in 1979, when the latter was charged with a battery offense, and found him to have been suffering from schizophrenia and to have constituted an immediate danger to himself and others. He had a history of "institutionalizations" and could not function outside them without resorting to drugs and violence.

A second psychiatrist, In Foo Lin, M.D., denied defendant's need for inpatient treatment, and believed that defendant should be placed in an outpatient program for alcoholism and drug abuse, provided he cooperated with authorities. Following the hearing, the court found that defendant: was not subject to involuntary admission to an institution for treatment; reasonably could be expected to inflict physical harm upon himself or another; and was in need of inpatient mental health treatment. Defendant was committed to a Department facility for a period not to extend beyond September 25, 1983. The facility director was given 30 days to file with the court a treatment plan evaluating defendant's progress and was ordered to file such a plan every 60 days thereafter.

The principal defense argument raised is that the instant statutory scheme unconstitutionally permits a lesser burden of proof for an involuntary commitment to the Department of individuals found not guilty of a crime by reason of insanity than for the involuntary commitment of all other individuals. In Illinois, a defendant may be acquitted of a criminal offense by reason of insanity if two events occur: (1) the evidence must raise a reasonable doubt as to defendant's sanity; and, (2) the State must be unable to satisfy its burden of showing defendant's sanity beyond a reasonable doubt. *People v. Foster* (1979), 76 Ill. 2d 365, 378-79, 392 N.E.2d 6; *People v. Redmond* (1974), 59 Ill. 2d 328, 336-38, 320 N.E.2d 321; *People v. Gardner* (1981), 97 Ill. App. 3d 854, 856, 424 N.E.2d 95.

The challenged statute, section 5—2—4(a) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(a)), provides that an insanity acquittee shall be committed to a mental health facility if found by the court to be "subject to involuntary admission *or in need of mental health services on an inpatient care basis.*" (Emphasis added.) The accentuated phrase applies to an insanity acquittee "who is reasonably expected to inflict physical harm upon himself or another and who would benefit from inpatient care or is in need of inpatient care." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(a)(1)(B).) Findings of the court shall be established by clear and convincing evidence. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(g).) The initial order for admission of an insanity acquittee may not exceed the maximum length of time that the acquittee would have been required to serve, less credit for good behavior, before becoming eligible for parole had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(b).) Within 30 days after admission and every 60 days thereafter, as long as the initial admission order remains effective, the facility director must file a "treatment plan" with the court. Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(b).

The standard for involuntarily committing nonacquittees is different than that described above. Under the Mental Health and Development Disabilities Code (Ill. Rev. Stat. 1981, ch. 91½, par. 1—100 *et seq.*), an adult may be involuntarily committed by court order provided there is a minimum finding, supported by clear and convincing evidence, that the adult is "subject to involuntary admission." (See Ill. Rev. Stat. 1981, ch. 91½, pars. 3—700, 3—808, 3—811, 3—812.) An adult so committed must be proven "mentally ill and who because of his illness is reasonably expected to inflict *serious* physical harm upon himself or another *in the near future*" or is unable "to guard himself from *serious* harm." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 91½, pars. 1—119(1), (2).

The crux of defendant's argument is that the legislative scheme creates a double standard in violation of his equal protection rights because an insanity acquittee may be committed without being "mentally ill" and without a reasonable expectation that he would inflict "serious" physical harm in the "near future," as in the case of an involuntary nonacquittee. Insanity acquittees, however, belong to a special class of persons whose dangerousness has been demonstrated by the criminal acts committed, thereby justifying additional safeguards prior to their release from detention. (*People v. Valdez* (1980), 79 Ill. 2d 74, 82-84, 402 N.E.2d 187; *People v. Thiem* (1980), 82 Ill. App. 3d

956, 403 N.E.2d 647; *Chase v. Kearns* (Me. 1971), 278 A.2d 132, 138.) A similar approach recently was taken by the United States Supreme Court in *Jones v. United States* (1983), 463 U.S. ____, 77 L. Ed. 2d 694, 103 S. Ct. 3043, where it was held that insanity acquittees could be involuntarily committed based on a "preponderance of the evidence" standard, even though clear and convincing evidence of mental illness was needed to commit nonacquittees, because of the "widely and reasonably held view that insanity acquittees constitute a special class that should be treated differently from other candidates for commitment." 463 U.S. ____, ____, 77 L. Ed. 2d 694, 709, 103 S. Ct. 3043, 3052-53.

The classifications created by the enactments involved here are neither unreasonable nor irrational. Insanity acquittees such as defendant have themselves advanced insanity as a basis for their conduct, which has been found to have constituted criminal offenses beyond a reasonable doubt. In contrast, nonacquittees have not been adjudicated to have injured society by the performance of a criminal act. Their conduct may be perceived by some as abnormal and symptomatic of a mental or emotional disorder; nonetheless, it may be merely idiosyncratic, yet within the range of acceptable behavior. (See *Addington v. Texas* (1979), 441 U.S. 418, 426-27, 60 L. Ed. 2d 323, 331, 99 S. Ct. 1804, 1809-10.) The legislature here rationally and reasonably may have believed that, since criminal acquittees have already revealed their dangerous propensities, it is unnecessary to show that they would inflict "serious" physical harm in the "near future" before involuntarily committing them to a mental health facility. See *Warren v. Harvey* (2d Cir. 1980), 632 F.2d 925, 931-32; *United States v. Ecker* (D.C. Cir. 1976), 543 F.2d 178, 199.

It must also be observed that the statute requires a determination that the acquittee "would benefit from inpatient care or is in need of inpatient care" as a prerequisite to commitment (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(a)(1)(B)), thereby insuring that an insanity acquittee's freedom will not be curtailed unless he is in need of inpatient treatment. Further, the distinction drawn between those who are "mentally ill" and those who "would benefit by inpatient care" in section 5—2—4(a) (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—2—4(a)(1)(A), (B)) does not render it unconstitutional. There has been no prior adjudication of any kind respecting the sanity of nonacquittees. With regard to acquittees, however, a prior tribunal has determined that a reasonable doubt exists as to their sanity. (*People v. Foster.*) The Illinois definition of insanity is quite narrow (see Ill. Rev. Stat. 1981, ch. 38, par. 6—2(a)); a defendant may not fall within the purview of the.

legal definition of insanity, yet he may be afflicted by a "mental illness" (Ill. Rev. Stat. 1981, ch. 38, par. 6—2(c)). Given the narrowness of this insanity classification, a finding that the acquittee "would benefit from inpatient care" provides a sufficient foundation for commitment. Rigid constitutional principles which may undermine legislative attempts to find an acceptable solution to a complex problem should not be established, particularly in view of limited scientific understanding of the criminally insane. Therefore, we conclude that the procedures and distinctions established in this legislative scheme are not violative of the equal protection clause.

The precedent primarily relied upon by defendant, *Baxstrom v. Herold* (1966), 383 U.S. 107, 15 L. Ed. 2d 620, 86 S. Ct. 760, and *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845, is inapposite, since neither case involved the class at issue here, namely, persons acquitted of criminal offenses by reason of insanity.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

DOWNING, P.J., and PERLIN, J., concur.