THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.*
ELOY SANCHEZ, Respondent-Appellant.

First District (2nd Division)   No. 83-400

Opinion filed August 7, 1984.—Rehearing denied September 5, 1984.

James J. Doherty, Public Defender, of Chicago (Marilyn Martin, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Cuomo, and Thomas D. Bilyk, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Respondent Eloy Sanchez was found not guilty by reason of insanity of homicide. Thereafter, a hearing was held to determine if Sanchez was in need of mental health treatment. (See Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4.) He appeals from the trial court's order finding him in need of mental health services on an inpatient basis.

Respondent shot and killed his wife and wounded his son and mother-in-law on August 21, 1981. Respondent was examined by three psychiatrists who concluded that at the time of the offense, respondent was suffering from a paranoid and persecutory delusion and that he was legally insane. The State presented no evidence in rebuttal. The trial court found respondent not guilty by reason of insanity.

As a result of this finding, a hearing was conducted to determine if respondent should be committed to a mental institution for treatment. (See Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4.) At the outset of the hearing, respondent contested the constitutionality of the statute under which the hearing was being held. The parties filed memoranda addressing the issue and the court found the statute to be constitutional. Dr. Joseph Mehr, chief psychologist at the Elgin Mental Health Center, testified at this hearing on December 21, 1982. Dr. Mehr had interviewed respondent the day prior to the hearing and on September 3, 1982. Mehr testified that in his opinion respondent was not subject to involuntary admission under section 5—2—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(a)(1)(A), but that he was in need of inpatient services (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(a)(1)(B)). Mehr believed that respondent's need of inpatient care stemmed from the danger that respondent could resort to violent behavior when placed in a stressful interpersonal situation, such as contact with his family.

On cross-examination, Dr. Mehr conceded that respondent's condition had been down-graded from schizophrenia to schizoid personality disorder to paranoid personality disorder and that respondent exhibited no evidence of hallucinations or disorganization of personality. Respondent had also exhibited no agitative or aggressive behavior.

Over respondent's objection, the State was permitted to reopen its case after Dr. Mehr's testimony and to present the testimony of Dr. Eduardo Machado, who examined respondent on December 17, 1982. Basically, Dr. Machado concluded that respondent suffered from schizophrenia and was in need of inpatient hospitalization. On cross-examination, Dr. Machado conceded that respondent had not exhibited violent behavior for quite some time.

At the close of the hearing, counsel for respondent urged that the

experts' "equivocal" testimony failed to meet the standard of clear and convincing evidence and urged conditional release under whatever conditions the court felt were appropriate. The court found that respondent was in need of inpatient mental health services. Respondent was committed for an indefinite period of time not to exceed 40 years. Respondent appeals.

Respondent first contends that, for several reasons, the standard for involuntary admission set forth in section 5—2—4(a)(2)(B) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(a)(1)(B)) is unconstitutionally vague and therefore violative of due process.

Initially, respondent contends that subsection (B) is tautological or circular. In support of this contention, respondent cites *Goldy v. Beal* (M.D. Pa. 1976), 429 F. Supp. 640. *Goldy* involved a Pennsylvania statute which allowed for involuntary and indefinite commitment of a person "in need of care and treatment" because of a mental disability. "Mental disability," in turn, was defined as a condition "[making] it necessary or advisable for him to be under care." Because of the circuitous nature of the statute, there was nothing to prevent its arbitrary enforcement. Accordingly, the court in *Goldy* struck the statute down as violative of due process.

■ Respondent attempts to draw a parallel between the statute in the instant case and that confronted in *Goldy*. A cursory reading of the statute in the instant case, however, reveals that it is not circular. The statute states:

> " 'In need of mental health services on an inpatient basis' means: a defendant who has been found not guilty by reason of insanity who is not subject to involuntary admission but who is *reasonably expected to inflict physical harm upon himself or another* and who would benefit from inpatient care or is in need of inpatient care." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(a)(1)(B).)

The highlighted phrase prevents this provision from being circular. Respondent must be found to be "reasonably expected to inflict physical harm upon himself or another" before a determination is made as to whether he would benefit from or is in need of inpatient care. Thus, contrary to respondent's assertion, the statute does not circuitously define "in need of mental health services on an inpatient basis" as a need for inpatient care.

Respondent's second due process attack concerns the absence from subsection (B) of the phrase "mental illness." By omitting the mental illness requirement, respondent contends that the statute dis-

penses with any requirement that there be a causal connection between respondent's potential dangerousness and the mental illness suffered at the time of the offense. Respondent concludes that because of the lack of a finding of causality between an identifiable mental illness and the potential for dangerousness, the statute allows for impermissible preventive detention.

The legislature's failure to use the phrase "mental illness" in enacting subsection (B) is not constitutionally fatal. We have previously noted that the requirement that there be a finding that an acquittee "would benefit from inpatient care" provides a sufficient foundation for commitment. (See *People v. Gamble* (1983), 117 Ill. App. 3d 543, 546-47, 453 N.E.2d 839.) This requirement, together with the requirement that there be a finding that respondent is "reasonably expected to inflict physical harm upon himself or another," are meaningful criteria which preclude arbitrary commitment decisions. Accordingly, we find that section 5—2—4(a)(1)(B) does not violate the due process clause.

We also find that subsection (B) implicitly requires that a respondent's potential dangerousness directly relate to the mental illness which led to respondent's acquittal. This implication derives from the procedures set forth in the statute. The statute provides that after a verdict of not guilty by reason of insanity, the defendant shall be examined to determine if he should be involuntarily admitted or if he is in need of mental health services. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4.) Following this examination, the court is to hold a hearing to determine if the defendant should be admitted or whether his needs could be dealt with adequately on an out-patient basis. In making this determination, the court is guided in part by subsection (B), which provides for inpatient care upon a finding of a reasonable expectation of dangerousness. Given that the procedures under section 5—2—4 follow only from a finding of not guilty by reason of insanity, it is evident that the focus of those procedures would be on the mental disorder which led to the acquittal. Any use of the provisions of section 5—2—4 to secure a commitment for a mental disorder different from that which led to the acquittal would be an improper attempt to secure a civil commitment, which is properly covered by section 1—119 of the Mental Health and Developmental Disabilities Code. Ill. Rev. Stat. 1981, ch. 91½, par. 1—119.

Respondent also lodges an attack on section 5—2—4 on equal protection grounds. This attack, however, is grounded on a misapprehension of Illinois law. Respondent first contends that there is no rational basis for distinguishing between insanity acquittees and civil commit-

tees. Respondent's argument and the cases he cites indicate that this contention is based on the belief that an insanity acquittal in Illinois results in a presumption of mental illness at the subsequent hearings under section 5—2—4. See *Allen v. Radack* (S.D. 1977), 426 F. Supp. 1052; *Matter of Torsney* (1979), 47 N.Y.2d 667, 394 N.E.2d 262; *Bolton v. Harris* (D.C. Cir. 1968), 395 F.2d 642.

■ However, it is clear that no presumption of mental illness results from an insanity acquittal and no such presumption exists in a section 5—2—4 commitment hearing. The insanity acquittal does not constitute an adjudication of a defendant's sanity; all that has been determined is that a reasonable doubt as to sanity exists. (See *People v. Gamble* (1983), 117 Ill. App. 3d 543, 546, 453 N.E.2d 839.) The fact that an acquittal occurred is relevant evidence at a section 5—2—4 commitment hearing, but it is the State that bears the burden of proving, by clear and convincing evidence, that an insanity acquittee is in need of mental treatment. (See *People v. Czyz* (1980), 92 Ill. App. 3d 21, 25, 416 N.E.2d 1.) In proving its case, the State must produce a current evaluation of the acquittee's state of mind and the commitment decision must be based on the acquittee's present conduct and state of mind. See *People v. Czyz* (1980), 92 Ill. App. 3d 21, 25, 416 N.E.2d 1; *People v. Butler* (1979), 69 Ill. App. 3d 556, 559, 387 N.E.2d 908.

Respondent's second contention is likewise grounded upon the mistaken belief that there is a presumption of mental illness in a section 5—2—4 commitment hearing. Under this contention, respondent alleges that there is no rational basis for the disparate treatment of insanity acquittees and those committed under the sexually dangerous persons Act. Respondent states that sexually dangerous persons can be committed only upon a finding of a current mental disorder, whereas insanity acquittees can be committed "upon a presumption derived from past conduct." But given the fact that there is no presumption of mental illness as a result of an insanity acquittal, respondent's premise for charging disparate treatment is erroneous and accordingly, his contention fails.

Finally, respondent contends that the State failed to show, by clear and convincing evidence, that he was in need of mental health services on an inpatient basis. In support of this contention, respondent points primarily to evidence that he was not viewed as posing an immediate physical danger to himself or to others. Dr. Mehr diagnosed respondent as suffering from a paranoid personality disorder. This diagnosis stemmed from respondent's belief that there was a conspiracy against him, that grease was being applied to his wind-

shield wipers to cause an accident, and that he thought his wife was meeting with a member of the KGB or the Cuban secret police. These delusions prevented respondent from understanding the crime he had committed to the point of believing that the killings were an accident and that a third party had fired the fatal shots. It was respondent's lack of insight as to the offense and his lingering doubts about the events surrounding the killings and his role in them that led Dr. Mehr to conclude that respondent was in need of inpatient care.

Dr. Machado's initial diagnosis was also paranoid personality. Dr. Machado testified that if paranoid personality were the only problem, inpatient hospitalization would not be recommended. Dr. Machado later changed his diagnosis to schizophrenia, although he had not observed any behavior indicative of such a disorder.

Citing *People v. Czyz* (1980), 92 Ill. App. 3d 21, 416 N.E.2d 1, respondent argues that paranoid personality is not a mental illness and hence, an insufficient basis for inpatient hospitalization. But in *Czyz,* the trial court ordered the defendant hospitalized despite the recommendations to the contrary by all three psychology experts who testified. (See also *People v. Smith* (1984), 126 Ill. App. 3d 5, 10.) In light of the unanimous recommendations of the experts, the court on appeal reversed the trial court's hospitalization order.

In the instant case, the experts unanimously recommended inpatient hospitalization. This fact serves to distinguish the instant case from *Czyz*. Moreover, in addition to diagnosing respondent as a paranoid personality, the experts in the instant case concluded that he was potentially dangerous to himself or to others. This factor further distinguishes this case from *Czyz*. It also reduces the significance of Dr. Machado's testimony that paranoid personality alone is an insufficient basis for hospitalization. It was respondent's potential for dangerousness which prompted the recommendations for hospitalization, and the diagnosis of paranoid personality would not appear to dictate a contrary recommendation.

Respondent also points to the fact that both experts in the instant case concluded that he was not expected to inflict serious physical harm in the near future. Both experts concluded that respondent was not capable of coping with a stressful interpersonal situation, such as a meeting with his son or his mother-in-law. Respondent likens this conclusion to the one reached in *People v. Nunn* (1982), 108 Ill. App. 3d 169, 438 N.E.2d 1342, wherein respondent was committed because he might not continue to take his medicine if treated on an outpatient basis. But unlike the possibility in *Nunn* that the defendant might stop taking his medicine, there is the probability in the instant case

that respondent will act on his paternal instincts and attempt to contact his son upon his release. Such a meeting could lead to a regression of respondent's paranoid condition and possibly result in violent behavior.

■ The burden was upon the State to prove by clear and convincing evidence that respondent was in need of inpatient care. (*People v. Turner* (1978), 62 Ill. App. 3d 782, 784, 379 N.E.2d 377.) Toward this end, the State produced two experts who testified that respondent was potentially dangerous and that he was in need of inpatient care. These conclusions satisfied the requirements of section 5—2—4(a)(1)(B) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(a)(1)(B)). Respondent had an opportunity to cross-examine these witnesses and to bring to the trial court's attention factors favoring outpatient treatment and weaknesses in the bases for the experts' conclusions. Upon the totality of the evidence presented, we find that the State proved respondent's need for inpatient care by clear and convincing evidence.

For the reasons expressed herein, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN, P.J., and PERLIN, J., concur.