*In re* RICHARD WILLIAMS, Asserted to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Richard Williams, Respondent-Appellant).

Second District   No. 2—86—0314

Opinion filed January 26, 1987.

Sandra Kopels and James B. Klein, both of Guardianship & Advocacy Commission, of Tinley Park, for appellant.

Robert J. Morrow, State's Attorney, of Geneva (John X. Breslin and Howard R. Wertz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

The respondent, Richard Williams, appeals from the order of the circuit court of Kane County entered on March 16, 1986, which found him subject to involuntary admission and hospitalization in the Department of Mental Health. In this appeal the respondent contends that the court erred when it: (1) allowed the State to proceed on its February 27, 1986, petition for involuntary admission and (2) found him subject to involuntary admission in the absence of clear and convincing evidence that because of mental illness, the respondent is reasonably expected to inflict serious harm upon himself or others. For the reasons set forth, we affirm the decision of the circuit court.

As this case involves extensive litigation, a summary of the respondent's prior history is required. The respondent has been involved with the Illinois legal system since 1971, when the court found him not guilty by reason of insanity for the murder of his first wife. In 1979, the court found the respondent guilty of aggravated battery and sent him to the Menard maximum-security mental-health facility.

On July 17, 1984, the circuit court of Kankakee County entered a commitment order which found the respondent subject to involuntary admission and hospitalization in the Department of Mental Health and

Developmental Disabilities for a period not to exceed 60 days. The respondent appealed from the July commitment order, and on May 14, 1985, the Appellate Court for the Third District reversed and remanded the case for a new hearing based on the ground that the respondent, who is indigent, was entitled to an independent psychiatric examination at State expense pursuant to section 3—804 of the Mental Health and Developmental Disabilities Code (the Code) (Ill. Rev. Stat. 1983, ch. 91½, par. 3—804). (*In re Williams* (1985), 133 Ill. App. 3d 232, 478 N.E.2d 867 (*Williams I*).) We note that, though the court reversed the order for the reasons stated above, it did find, nonetheless, sufficient evidence to support the July order of commitment.

On February 28, 1985, prior to the reversal of the July commitment order, the circuit court of Kankakee County entered a second commitment order which found the respondent subject to involuntary admission and hospitalization in the Department of Mental Health for a period not to exceed 60 days. The Appellate Court for the Third District found the second commitment order to be invalid, however, and reversed its entry on January 17, 1986. (*In re Williams* (1986), 140 Ill. App. 3d 708, 489 N.E.2d 347 (*Williams II*).) Specifically, the appellate court found that although it was clear the respondent was subject to involuntary admission and hospitalization, the circuit court had entered the second commitment order before *Williams I* had been retried on remand, and, thus, the respondent had not yet received his independent psychiatric examination. Thus, the court reversed the second commitment order based on the circuit court's failure to authorize an independent psychiatric examination as required by statute.

In *Williams II* the appellate court determined that a remand for a new hearing would be pointless since the State had filed yet a third petition for involuntary admission against the respondent. The court noted that the third petition was still pending in the circuit court. The court also noted that the hearing after remand on the first commitment order had been held on October 17, 1985, and at that time the circuit court again found the respondent subject to involuntary admission. The respondent filed an appeal from that order. The appellate court reasoned that as: (1) the respondent was confined pursuant to the October 17, 1985, order, as well as pursuant to the order which was the subject of that appeal, (2) the validity of the commitment order on the first petition had not been finally determined, and (3) a third petition was pending, no useful purpose would be served by remand.

It is necessary at this time to track the proceedings of record with regard to this third petition filed on April 26, 1985. The court set the case for hearing on April 30, 1985. On that date, the court continued the case, on its own motion, until May 7, 1985. On May 7, 1985, the respondent requested a trial by jury. The court subsequently set the case for a jury trial on July 24, 1985. On that date, however, the Kankakee County circuit court found it improper to proceed until after the remand hearing on the first petition. On October 21, 1985, after the remand hearing, the court set the third petition for jury trial on November 19, 1985. On October 11, 1985, the respondent was transferred to the Elgin Mental Health Center. On October 23, 1985, the State filed a motion for change of venue. On November 7, 1985, the court allowed the motion and ordered the case transferred to Kane County for further proceedings.

On February 21, 1986, after the respondent's transfer to the Elgin Mental Health Center, the Kane County public defender brought a motion which sought the respondent's immediate release. Specifically, counsel argued that the respondent, who had been at the Elgin Mental Health Center since November 1985, on the transfer from Manteno, had been held illegally absent any petition or certificate having been acted upon. The court took the matter under advisement for one week.

On February 27, 1986, the State prepared a new petition and certificates. On February 28, 1986, the court heard further arguments on the respondent's motion for immediate release. The court noted that it would first address the motion for immediate discharge and then, if need be, hear arguments with regard to the new petition. Counsel for the respondent reiterated his previous arguments. The State's Attorney responded that delays in transferring paper work from one county to another slowed down the judicial process.

The court granted the respondent's request. Specifically, the court stated that in view of the appellate court's reversal of the second petition, and the fact that no petition and no certificates were on file, it must honor the respondent's request.

At that time the judge also allowed the State's request for a hearing instanter on the petition filed February 27, 1986. The respondent then made a demand for a jury trial. On March 7, 1986, without a jury, the court heard arguments on the February 27, 1986, petition, and on March 13, 1986, the court found the respondent subject to involuntary admission and hospitalization.

On appeal the respondent contends that he has been illegally detained without a court order finding him subject to involuntary admis-

sion, in total, for a 10-month period in violation of section 3—800(b) of the Code (Ill. Rev. Stat. 1983, ch. 91½, par. 3—800(b)). The first period encompasses the six months between April 26, 1985, when the State filed its third petition for involuntary admission, until October 1985. The second period involves the four-month period the respondent was detained at the Elgin Mental Health Center until February 21, 1986, when the present proceeding commenced.

Second 3—800(b) of the Code provides:

"If the court grants a continuance on its own motion or upon the motion of one of the parties, the respondent may continue to be detained pending further order of the court. Such continuance shall not extend beyond 15 days except to the extent that continuances are requested by the respondent." Ill. Rev. Stat. 1983, ch. 91½, par. 3—800(b).

It is the respondent's position that pursuant to the statute he can be detained for no longer than a 15-day continuance and, thus, his 301-day detention since the filing of the April petition is illegal. The respondent also argues that the court improperly allowed the State to proceed on the February 27, 1986, petition as that action, in effect, deprived the respondent of his remedy, discharge, and merely "paid lip service" to the serious violation of the respondent's rights.

The respondent also contends that the court denied him his constitutional right to due process of law with regard to the timeliness of the determination that he was in need of involuntary treatment. The respondent further contends that the serious delay in bringing his case to trial forced him to waive his right to trial by jury on the February 27, 1986, petition. The respondent asserts that he waived that right solely because his prior jury demand had gone allegedly unheeded for a year, and any further delays in obtaining a hearing in this matter would be intolerable to him.

Article VII of the Code governs admission by court order. Section 3—702(b) provides:

"If the petition is accompanied by 2 certificates executed pursuant to Section 3—703 and the court finds the documents are in order, it shall set the matter for hearing." Ill. Rev. Stat. 1983, ch. 91½, par. 3—702(b).

Section 3—706 of the Code provides:

"The court shall set a hearing to be held within 5 days, excluding Saturdays, Sundays and holidays, after its receipt of the second certificate or after the respondent is admitted to a mental health facility, whichever is earlier. *** Unless the respondent is admitted pursuant to Section 3—704, he may re-

main at his residence pending the hearing." Ill. Rev. Stat. 1983, ch. 91½, par. 3—706.

In this case, the State filed the petition and certificates on February 27, 1986. The respondent's trial began on March 7, 1986. Excluding Saturday, March 1, and Sunday, March 2, the respondent was brought to trial within the proper statutory period with regard to the February 27, 1986, petition. We disagree with the respondent's position that any delays which occurred with regard to prior petitions precluded the State from proceeding on the February 27, 1986, petition or provide a ground for reversal of the March 13, 1986, commitment order.

Before discussing legal principles, several points must be made with regard to the lower court proceedings, specifically the respondent's motion for immediate discharge and the court's apparent dismissal of the April 26, 1985, petition.

At the hearing, the parties agreed that on January 16, 1986, the Appellate Court for the Third District reversed outright the second commitment order. Apparently the trial court judge mistakenly believed that the January 16, 1986, reversal in *Williams II*, which was for failure to authorize a psychiatric examination, entitled the respondent to discharge and negated the previous October 17, 1985, order which, on remand, had found the respondent subject to involuntary admission. A careful reading of *Williams II*, however, demonstrates that the appellate court did not intend that result. First, the appellate court recognized that the respondent was confined pursuant to the October 17, 1985, order on the first petition and, thus, the respondent would not be subject to discharge until his rights under that petition were settled. The appellate court also recognized that the third petition (filed on April 26, 1985) was pending in the circuit court. The appellate court correctly noted that once the respondent's rights under the first petition were settled, the State could proceed with a hearing under the third petition still pending in the circuit court. *In re Williams* (1986), 140 Ill. App. 3d 708, 712, 489 N.E.2d 347.

Thus, an appeal pending from the first petition as well as a pending third petition in the circuit court should have been the situation which greeted the circuit court judge on February 21, 1986. It is our opinion that the trial court judge's misinformation as to these two proceedings necessitated the State's filing of the February 27, 1986, petition as well as a request for hearing instanter.

■ Addressing the respondent's argument, we are of the opinion that the respondent's reliance on *In re Whittenberg* (1986), 143 Ill.

App. 3d 836, 493 N.E.2d 662, for the proposition that the State's filing of an untimely petition results in reversible error, is misplaced. The relevant portion of the Code in *Whittenberg*, section 3—403 (Ill. Rev. Stat. 1983, ch. 91½, par. 3—403), states guidelines which pertain to instances when *voluntary* patients can be subject to *involuntary* admission by court order. Specifically, the statute requires that the petition for involuntary admission of the voluntary admittee be filed within five business days of the voluntary admittee's request for a discharge. Since the State in that case filed its petition more than five days after the voluntary admittee's request for discharge, the court lacked jurisdiction to enter the order for involuntary admission. In the present case, however, the respondent is, and has always been, a person subject to involuntary admission, and, furthermore, the record demonstrates that the State filed the April 26, 1985, petition before the statutory limit. In addition, as discussed above, the hearing on the February 27, 1986, petition was held within the statutory period. Clearly then, *In re Whittenberg* is inapplicable.

■ We also find the respondent's argument that delays in bringing his case to trial violated his rights so as to preclude the court's proceeding on the February 27, 1986, petition without merit. Indeed, the record demonstrates that the third petition, filed on April 26, 1985, was set promptly for hearing on April 30, 1985. The court continued the case on its own motion until May 7, 1985. On that date the respondent requested a trial by jury. The court apparently delayed the proceeding on the third petition until the respondent received the required independent psychiatric examination and the remand hearing on the first petition had been held. Thereafter, the respondent on October 21, 1985, was transferred to the Elgin Mental Health Center in Kane County. In this regard, no evidence exists that the State's Attorney's office of Kane County sought to deprive the respondent of his rights. The record indicated that there existed difficulty in transferring the respondent's records from Kankakee County to Kane County. Furthermore, immediately after filing the February 27, 1986, petition, the assistant State's Attorney requested an instanter hearing.

In addition, there is nothing in the statute which indicates that the relief the respondent requests, absolute preclusion of filing future petitions as punishment for judicial delay, is available. We cannot inject remedies not found in the statute. (*Droste v. Kerner* (1966), 34 Ill. 2d 495, 504, 217 N.E.2d 73.) " 'It is not for the court to pass upon what the *** laws ought to be, but to declare what they are.' " (*Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*

(1983), 95 Ill. 2d 211, 220, 447 N.E.2d 394, quoting *People v. Wilcox* (1908), 237 Ill. 421, 428, 86 N.E. 672.) We agree with the State that absolute dismissals and discharges based upon delays in the judicial process would be unwise. Inherent in the civil commitment proceeding are the distinct interests of providing patients with necessary treatment as well as protecting society from dangerous conduct. (*People v. Sansone* (1974), 18 Ill. App. 3d 315, 322, 309 N.E.2d 733.) Thus, an absolute dismissal or discharge would be contrary to the basic aim of the Code.

We emphasize here that we do not condone any delays which occurred in bringing this case to trial. A special jury could have been called in order to give the defendant a trial much sooner than was possible under the regular procedure. (*In re Williams* (1986), 140 Ill. App. 3d 708, 712, 489 N.E.2d 347 (*Williams II*).) However, as the court noted in *Williams II*, the statutory guidelines requiring a hearing, possibly before a jury, within a certain time frame present serious problems for the judicial systems in those counties having mental facilities.

■ We also believe that the respondent's assertion that petition delays coerced a jury waiver is without merit. Section 3—802 of the Code guarantees a respondent, in civil commitment proceedings, a statutory right to a jury trial. (Ill. Rev. Stat. 1983, ch. 91½, par. 3—802.) Thus, the right to a jury trial exists, but only if one is requested. (*People v. Gerich* (1974), 22 Ill. App. 3d 575, 581, 317 N.E.2d 724.) Statutes which govern rights to jury trial should be liberally construed in favor of granting the right, both as to form and timeliness. Thus, a timely demand, even though made orally, can be granted. *Ealy v. Peddy* (1985), 138 Ill. App. 3d 397, 400, 485 N.E.2d 1182.

■ The hearing transcript indicates that the trial judge clearly offered the respondent a right to a trial by jury. Nothing in the record indicates that the delays which occurred previously would have prevented this hearing from proceeding. Indeed, the judge could have called a special jury. It is our opinion that the respondent was given the choice and he clearly waived his right to a jury.

■ We believe that the respondent's second argument on appeal, that the State failed to sustain its burden of proof, is also without merit. In order to find a person subject to involuntary admission, it must be established by clear and convincing evidence that the person is a definite danger to himself or society. (*In re Stephenson* (1977), 67 Ill. 2d 544, 556, 367 N.E.2d 1273; *In re Williams* (1985), 133 Ill. App. 3d 232, 233, 478 N.E.2d 867.) On appeal, a trial court's determination will not be reversed unless it is manifestly erroneous. In civil

commitment cases, the medical science of predicting the future is inexact, so that a reviewing court would normally uphold a commitment order where there is a reasonable expectation that the respondent might engage in dangerous conduct. (*In re Rogers* (1985), 133 Ill. App. 3d 524, 525, 478 N.E.2d 1198; *In re Johnston* (1983), 118 Ill. App. 3d 214, 218, 454 N.E.2d 840.) The reviewing court cannot set aside the decision of the trial court because it, applying the requisite standard, would have ruled differently. (*In re Mazzara* (1985), 133 Ill. App. 3d 146, 149, 478 N.E.2d 567.) Bearing these standards in mind, we consider the evidence in this case.

On appeal, the respondent concedes that he is mentally ill. Once that is determined, in order for an involuntary commitment order to be proper, section 1—119 of the Code provides that the respondent must also be found to be: (1) one who because of his mental illness is reasonably expected to inflict serious physical harm to himself or another in the near future, or (2) one who because of his illness is unable to provide for his basic physical needs so as to guard himself from serious harm. Ill. Rev. Stat. 1983, ch. 91½, par. 1—119.

It is the respondent's position that the State failed to present sufficient evidence with regard to the first clause, *i.e.*, the likelihood that respondent would inflict serious harm on himself or others if released. Specifically, the respondent argues that the State failed to introduce any evidence of a current act or physical violence on the part of the respondent.

In the instant case, the State presented the testimony of psychiatrist Dr. Nora Dy. Dr. Dy was the respondent's treating physician and had reviewed respondent's history prior to coming to the Elgin Mental Health Center. Dr. Dy testified that the respondent is mentally ill and specifically suffers from a schizophrenic chronic paranoid antisocial personality disorder. Dr. Dy also testified that the respondent had recently engaged in aggressive conduct. Dr. Dy concluded that the respondent would be reasonably expected to inflict serious harm upon himself or others in the near future and is in need of immediate admission in order to prevent that type of harm. Alternatives to hospitalization could not be considered because the respondent refused to discuss such matters with his treating physician.

The State also called James O'Keefe, a psychologist assigned to the respondent. O'Keefe testified, "I believe Richard has a schizophrenic condition, paranoid type ***." This diagnosis was based on O'Keefe's review of the respondent's records and his observations of the respondent. O'Keefe also testified that the respondent refused any psychotropic medication, as well as formal or individual counseling.

The respondent then testified on his own behalf. The respondent denied that he has ever harmed anyone. However, on cross-examination, the respondent admitted that he was found not guilty by reason of insanity for the murder of his wife and, in an unrelated incident, he was convicted of aggravated battery. The respondent also testified, "I'm not suffering from no mental illness nor have I ever had [*sic*]."

■■ A respondent may be involuntarily committed even where there exists no evidence of prior harmful conduct, provided the trier of fact's determination is based upon an adequate medical opinion. (*People v. Sansone* (1974), 18 Ill. App. 3d 315, 323, 309 N.E.2d 733.) "Due process does not require that a person be charged with a specific dangerous overt act, but that there be a nexus between the facts asserted and a finding of 'in need of mental treatment.' " (18 Ill. App. 3d 315, 324, 309 N.E.2d 733.) In the present case, the respondent has a history of violence related to his mental illness. He has been found not guilty by reason of insanity of the murder of his wife and, in an unrelated incident, was found guilty of aggravated battery. Evidence was also presented that the respondent had recently engaged in aggressive conduct. Where, as here, there exists evidence of prior dangerous conduct, together with evidence that the respondent remains in need of mental treatment, the commitment order should be affirmed. *In re Chapman* (1978), 67 Ill. App. 3d 382, 385,385 N.E.2d 56.

■■ Finally, we also find the respondent's argument that the "decision to commit the respondent was based upon his past behavior and not upon a fresh evaluation of his current conduct and state of mind" is without merit. During the trial, the respondent objected to extensive, specific testimony regarding his prior history. In sustaining the objection the trial judge stated: "about past conduct, the court will permit [Dr. Dy] to review her record generally, but you were correct in any specific acts. We are more interested in his present condition than past history." Thus, the trial judge acknowledged that he could base his decision only on the evidence of the respondent's present condition.

Therefore, for the reasons set forth above, the decision of the circuit court of Kane County is affirmed.

Affirmed.

NASH and REINHARD, JJ., concur.