THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD WASHINGTON, Defendant-Appellant.

First District (4th Division)   No. 85—1091

Opinion filed March 3, 1988.

74

James J. Doherty, Public Defender, of Chicago (Richard Gade, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (James E. Fitzgerald and Nancy L. Grauer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:
Following a bench trial, defendant, Gerald Washington, was found not guilty by reason of insanity of rape and unlawful restraint. (Ill. Rev. Stat. 1983, ch. 38, pars. 11—1, 10—3.) In a subsequent hearing, the trial court also found that defendant was subject to involuntary admission and remanded him to the Illinois Department of Mental Health for a maximum period of 30 years. Defendant appeals from both the order that found him not guilty by reason of insanity and that which found him subject to involuntary admission.
We affirm.

BACKGROUND
Defendant was charged with the rape and unlawful restraint of an adult woman at a mental health center in August 1983. Both defendant and the victim were patients at the facility at the time. Defendant was found unfit to stand trial and was hospitalized until April 1984. At a bench trial in November 1984, the State and defendant stipulated to the following.
For approximately two days before the rape, the victim was incoherent, her eyes were glassy, and she was unable to understand directions given to her by her mother. The victim's mother brought her to the Madden Mental Health Center (Center) for admission shortly after complainant had fully disrobed and attempted to run out of her home. Within an hour of her daughter's admission to the Center, the mother received a telephone call informing her that her daughter had been sexually assaulted. The mother returned immediately; her

daughter remained incoherent and uncommunicative. The victim had no recollection of the events on the day of the rape, the two days preceding the rape, or for some time thereafter. A nurse at the Center witnessed the defendant's commission of the offense.

Dr. Robert Reifman, a psychiatrist from the Psychiatric Institute of the Circuit Court of Cook County, testified on behalf of the defendant. He stated that he examined the defendant in December 1983 and also reviewed medical reports regarding the defendant from other centers. As a result of his examination of the defendant and review of these reports, Dr. Reifman concluded that defendant lacked the substantial capacity to conform his conduct to the requirements of the law and therefore was legally insane at the time of the crime. This determination was based on considerations that the crime occurred in a mental hospital when defendant was a patient; that he had been admitted to the center because he was out of control; that while he was at the center he was hyperactive, refused medication, had to be restrained, and was out of contact with reality; and that the doctor, as well as other examiners, had concluded that defendant suffered from schizophrenia with verifiable episodes of psychosis. Dr. Reifman noted that there was a high probability that defendant would be subject to involuntary admission.

Based upon this evidence, the trial court found defendant not guilty by reason of insanity and ordered defendant remanded to the Illinois Department of Mental Health for an evaluation of the necessity for involuntary admission.

Thereafter the trial court held a hearing with respect to defendant's need for additional mental health treatment. Dr. David Das, a registered psychologist employed by the Manteno Mental Health Center, testified on behalf of the State. Dr. Das interviewed defendant on three occasions, most recently in January 1985 shortly before the hearing, to ascertain his state of mental health. Based upon these interviews, Das concluded that defendant was in need of mental health services on an inpatient basis for several reasons. Das testified that defendant was suffering from a schizophrenic disorder, of which the major symptoms were in remission because of defendant's treatment with psychotropic medication at the Center. However, defendant refused to recognize that he suffered from any kind of mental illness and minimized his past problems with abuse of drugs. He also represented to Das that he saw no need for outpatient treatment, but would seek such treatment if told to do so.

Das stated that defendant had no insight into his mental condition and not much motivation for outpatient treatment, as well as a

tendency to minimize or deny his past difficulties. The doctor also testified that, in his opinion, defendant would not continue his medication if he were released, and that without such medication, defendant's schizophrenia would continue.

On cross-examination, Dr. Das reiterated that he had spoken with defendant a few days earlier and that defendant still did not feel there was any great problem in his mental condition. Das acknowledged that in his latest conversation with the defendant, defendant did not display anger, hostility, or homicidal or suicidal ideation. Das also stated that defendant's continued treatment as an inpatient would include not only medication, but also psychotherapy on a one-to-one basis on at least a weekly basis. Dr. Das stated that with such continued treatment, it was his opinion that defendant might in the future be eligible for treatment on an outpatient basis, and recognized his obligation to bring such change in the defendant's state to the court's attention. Das also acknowledged that improvement in defendant's condition would permit the issuance of an off-ground pass, and that Das would bring to the court's attention his eligibility for this program.

The trial court found that defendant was subject to involuntary admission and ordered him remanded to the Illinois Department of Mental Health for a period not to exceed 30 years. Defendant appeals from the trial court's finding that he was not guilty of rape and unlawful restraint by reason of insanity, and the trial court's order finding him subject to involuntary commitment.

OPINION

I

Defendant argues that because the State did not prove beyond a reasonable doubt that he committed a criminal act, the trial court erred in determining that he was not guilty by reason of insanity. Specifically, defendant maintains that the State failed to produce sufficient evidence that he committed the act with the use of force and without the consent of the victim.

Under the definition of rape under Illinois law in effect when defendant committed the offense, "force" occurs when the victim is incapable of consenting. (See, e.g., People v. O'Neal (1977), 50 Ill. App. 3d 900, 906, 365 N.E.2d 1333; People v. Borak (1973), 13 Ill. App. 3d 815, 820, 301 N.E.2d 1.) The capacity to consent assumes an intelligence capable of understanding the nature of intercourse and its consequences. (People v. McMullen (1980), 91 Ill. App.

3d 184, 188-89, 414 N.E.2d 214; *People v. Blunt* (1965), 65 Ill. App. 2d 268, 273, 212 N.E.2d 719; see also *People v. Farrokhi* (1980), 91 Ill. App. 3d 421, 428, 414 N.E.2d 921; Brody, *Rape of the Mentally Deficient: Satisfaction of the Nonconsent Element,* 15 J. Marshall L. Rev. 115, 116-17 (1982).) Under Illinois statutory law, force, as an element of rape, may be established by demonstrating that the victim was "so mentally deranged or deficient that she cannot give effective consent to intercourse." Ill. Rev. Stat. 1983, ch. 38, par. 11—1.

■ Based upon our review of the record, we determine that the State's evidence supported the trial court's finding that the victim was incapable of consent at the time of the offense. Shortly before the incident occurred, the complainant had been admitted to the Center because she was incoherent, nonresponsive, and unable to understand instructions. Following the assault, the victim's mother was still unable to communicate with her. This evidence demonstrated that the victim was "so mentally deranged *** that she [could not] give effective consent to the intercourse." Ill. Rev. Stat. 1983, ch. 38, par. 11—1.

■ Defendant maintains that the testimony of the victim's mother regarding the victim's mental condition was insufficient to establish that the complainant was so mentally unstable that she was effectively unable to consent. Defendant stresses that the State presented no medical evidence regarding the nature or extent of the complainant's mental condition. However, defendant cites to no authority to indicate that medical evidence was necessary to the State's proof of the offense charged. The State's uncontradicted evidence unequivocally demonstrated that the victim was incoherent, nonresponsive, and unable to understand directions. Under these circumstances, we hold that the State's failure to present expert medical testimony regarding the victim's mental condition was not fatal to the State's case and that the evidence was sufficient to establish beyond a reasonable doubt that the victim lacked the mental capacity to consent to intercourse.

For these reasons, we affirm the trial court's order finding defendant not guilty by reason of insanity.

II

■■ ■ Defendant also argues that the trial court erred in finding him subject to involuntary admission. Before an individual may be found in need of involuntary inpatient treatment, his danger to himself or others must be established by clear and convincing evidence. (See Ill. Rev. Stat. 1985, ch. 38, pars. 1005—2—4(a)(1)(A), (g); *In re*

*Stephenson* (1977), 67 Ill. 2d 544, 556, 367 N.E.2d 1273; *In re Williams* (1987), 151 Ill. App. 3d 911, 919, 503 N.E.2d 816.) The trial court's determination is subject to reversal if it is manifestly erroneous. *In re Williams* (1987), 151 Ill. App. 3d 911, 919, 503 N.E.2d 816.

■■ ■ An order of involuntary commitment is appropriate where there is evidence of the person's prior dangerous conduct and his continued need for inpatient mental health treatment. (*In re Williams* (1987), 151 Ill. App. 3d 911, 921, 503 N.E.2d 816; see also *In re Stephenson* (1977), 67 Ill. 2d 544, 563-64, 367 N.E.2d 1273.) Such an order must be based upon an explicit medical opinion regarding the individual's future conduct (*People v. Czyz* (1980), 92 Ill. App. 3d 21, 25, 416 N.E.2d 1; *People v. Smith* (1984), 126 Ill. App. 3d 5, 9, 466 N.E.2d 1226; but see *In re Haber* (1979), 78 Ill. App. 3d 1120, 1122, 398 N.E.2d 121), as well as a "fresh evaluation of an individual's conduct and state of mind" (*People v. Bradley* (1974), 22 Ill. App. 3d 1076, 1084, 318 N.E.2d 267, 273; see also *People v. Sanchez* (1984), 126 Ill. App. 3d 746, 750, 467 N.E.2d 1085; *People v. Butler* (1979), 69 Ill. App. 3d 556, 559, 387 N.E.2d 908). Evidence of prior hospitalization, together with the underlying facts of that hospitalization, may also be considered as relevant factors in determining a person's dangerousness. *People v. Bradley* (1974), 22 Ill. App. 3d 1076, 1085, 318 N.E.2d 267.

■■ The testimony of Dr. Das at the trial court's hearing established that defendant, if not given continued inpatient mental health treatment, would become a danger to himself and others. The doctor testified that because defendant had no insight into his mental condition, minimized his problems, and did not perceive the need for outpatient treatment, it was unlikely that defendant would continue treatment if he were not involuntarily admitted. Dr. Das also explicitly stated that defendant's schizophrenia would "continue" in the absence of medication, and that in this condition, defendant's harmful conduct to others, as displayed by his rape of the victim, would probably recur. In light of this evidence, we conclude that the trial court properly ordered that defendant be involuntarily admitted for inpatient treatment for his mental disabilities.

■■ Defendant maintains that the trial court's order was motivated solely by a concern that defendant might not take his medication if treated as an outpatient. Citing *People v. Nunn* (1982), 108 Ill. App. 3d 169, 438 N.E.2d 1342, he asserts that this consideration, standing alone, is not sufficient to support an order of involuntary admission. *Nunn* is distinguishable from the case at bar. In *Nunn*,

the trial court could only speculate that the defendant might refuse medication if treated on an outpatient basis, since there was no evidence that the defendant had ever refused to take medication.

Here, however, the record establishes that defendant refused to take medication when he was first admitted to the Center in 1983, and that he still does not perceive the value of continued medical treatment. (See *People v. Hoffman* (1986), 140 Ill. App. 3d 1056, 1066, 489 N.E.2d 460.) Also, at the time of the trial court's hearing, defendant had not established any therapeutic counseling relationship. (See *In re Williams* (1987), 151 Ill. App. 3d 911, 920, 503 N.E.2d 816.) *Nunn* is therefore inapposite to the instant case, and defendant's past refusal to take his medication was properly considered as a factor in determining his potential dangerousness if he were not involuntarily admitted for further treatment.

Defendant asserts that the trial court erroneously considered reports of other doctors regarding defendant's prior treatment and conduct for the substantive purpose of determining whether he should be involuntarily admitted. (See *People v. Anderson* (1986), 113 Ill. 2d 1, 7, 495 N.E.2d 485, *cert. denied* (1986), 479 U.S. 1012, 93 L. Ed. 2d 713, 107 S. Ct. 658; *Mayer v. Baisier* (1986), 147 Ill. App. 3d 150, 157-58, 497 N.E.2d 827, *appeal denied* (1986), 113 Ill. 2d 561.) Because we find that the testimony of Dr. Das was sufficient to support the trial court's determination, we need not address defendant's speculation that the trial court improperly considered prior reports of defendant's treatment.

For the reasons stated, the orders of the circuit court of Cook County are affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.