(No. 89731.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. THOMAS JURISEC, Appellant.

*Opinion filed February 22, 2002.—Rehearing denied April 1, 2002.*

Robert Agostinelli, Deputy Defender, of Ottawa, and Elaine Spiliopoulos, Assistant Defender, of Chicago, both of the Office of the State Appellate Defender, for appellant.

James E. Ryan, Attorney General, of Springfield, and James W. Glasgow, State's Attorney, of Joliet (Joel D. Bertocchi, Solicitor General, and William L. Browers and Domenica A. Osterberger, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Defendant, Thomas Jurisec, is an insanity acquittee who had been granted a conditional release from the custody of the Department of Human Services (the Department), as provided in section 5—2—4 of the Unified Code of Corrections (the Code) (730 ILCS 5/5—2—4 (West 1998)). On November 4, 1998, the circuit court of Will County found that defendant was not fulfilling a condition of his release and returned defendant to the custody of the Department. The appellate court affirmed the circuit court in an unpublished order. No. 3—98—

1032 (unpublished order under Supreme Court Rule 23). We granted defendant's petition for leave to appeal. 177 Ill. 2d R. 315. For reasons that follow, we reverse the judgment of the appellate court and remand for further proceedings.

## BACKGROUND

In April 1983, a complaint was filed in the circuit court of Will County charging defendant with aggravated indecent liberties with a child, a Class X felony. After a bench trial in 1985, defendant was found not guilty by reason of insanity. See 725 ILCS 5/115—3 (West 2000). Following his acquittal, defendant was evaluated by the Department and, after a hearing pursuant to section 5—2—4(a) of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 1005—2—4(a), now 730 ILCS 5/5—2—4(a) (West 2000)), was found to be subject to involuntary admission and in need of inpatient mental health services (see Ill. Rev. Stat. 1983, ch. 38, par. 1005—2—4(b), now 730 ILCS 5/5—2—4(b) (West 2000)). The court issued an order, dated April 26, 1985, committing defendant to the custody of the Department for a period not to exceed 30 years.

In February 1990, defendant was granted a conditional release from the Department. See 730 ILCS 5/5—2—4(a)(1)(D), (d) (West 1998). One of the conditions of the release was that defendant receive treatment with the drug Depo Provera, a female hormone that decreases sexual impulses and behavior in males. Upon his release, defendant began receiving weekly injections of Depo Provera. This continued until July 1991, when the shots were stopped at defendant's request due to his concern about the drug's side effects.[1] Three years later, in August 1994, the Department received information that defen-

---

[1] The record indicates that Depo Provera can cause liver problems, increased sugar levels, and diabetes.

dant had reoffended by sexually abusing his niece while baby-sitting. Dr. Kelly, defendant's treating physician, filed a report with the court indicating that, due to a recurrence of defendant's pedophilic disorder, defendant was in need of long-term mental health services on an inpatient basis. The Will County State's Attorney's office filed a petition requesting the revocation of defendant's conditional release and his involuntary readmission to the Department. A hearing was held on September 19, 1994, at which time the petition was granted by agreement of the parties and defendant was returned to the custody of the Department.

In February 1996, the Department notified the court that defendant, once again, was no longer subject to involuntary admission or in need of inpatient treatment. See 730 ILCS 5/5—2—4(d) (West 1998). The court held a hearing on May 7, 1996, and, after evidence was presented, granted defendant a second conditional release. At the hearing, the court admonished defendant that "part of my conditional release order is that you continue to take your Depo Provera. *** Not quit because you don't want to take it anymore, not quit because you're worried about the health risk. That is part of the condition of my order allowing you to be released."

The court also stated:

"If there is any change in the type of medication, I want to be notified. If the medication becomes life threatening the Court is going to be notified, because you will not stop taking your Depo Provera before the Court is notified."

The written order granting defendant's second conditional release listed the terms of the release as follows:

"[The defendant] is to be conditionally released from the custody of [the Department] upon condition that Defendant abides by treatment program through Isaac Ray Center, resides in Gateway Sober Living Environment and takes Depo Provera. Court shall be notified every 60 days

that the Defendant is taking Depo Provera. \*\*\* Conditional release subject to revocation upon Defendant refusing/ceasing/or stops taking the Depo Provera."

The court also sent a letter to defendant's treating physician, Dr. Kelly, advising him that defendant's conditional release would be revoked if defendant refused to take Depo Provera.

Defendant was released on July 22, 1996. Three months later, on October 18, 1996, defendant was arrested and held in custody at the Cook County jail on charges related to the 1994 sex offense which precipitated the revocation of defendant's conditional release in September 1994.

The record reveals that the Department sent reports to the circuit court of Will County, advising the court that defendant had been incarcerated and was not receiving Depo Provera. However, no action was taken until September 24, 1998, almost two years after defendant's arrest, when the Will County State's Attorney filed a petition to revoke defendant's conditional release and return him to the custody of the Department. The grounds for revoking defendant's conditional release were listed in the petition as follows:

"7. That on October 18, 1996, the defendant was arrested in Cook County. He has remained in Cook County Jail since that date.

8. The defendant has not received his Depo Provera medication since September of 1996."

On November 4, 1998, the Will County circuit court held a hearing on the petition. At this hearing, it was stipulated by the parties that Dr. Jonathan Kelly, if called, would testify that defendant had been ordered to receive Depo Provera as a condition of his release, that defendant had been taking the medication and complying with his therapy sessions and AA meetings until his incarceration in Cook County, and that defendant had not received a Depo Provera shot since October 9, 1996. After this stipulation was entered, the State rested.

Defendant testified in opposition to the petition. He stated that he was residing at the Cook County correctional facility, where he had been held since October 1996 on "pending charges" regarding the 1994 criminal sexual assault.[2] Upon his arrival at the correctional facility, defendant informed the psychiatric supervisor that he was required to receive shots of Depo Provera. The psychiatric supervisor, however, refused to administer Depo Provera, citing as a reason the fact that Depo Provera is an experimental drug not approved by the Federal Drug Administration (FDA).

Defendant contacted his attorney, who then filed petitions in the circuit court of Cook County to obtain court orders to have Depo Provera administered to defendant at the correctional facility. The Cook County circuit court issued orders on December 6, 1996, February 19, 1997, and April 27, 1997, directing facility authorities to administer the medication to defendant. Copies of these orders were filed as exhibits at defendant's hearing. Defendant testified that, despite these court orders, the psychiatrists at the correctional facility continued to refuse to administer Depo Provera to him. According to defendant, the psychiatrists ignored the court orders due to concerns about the liability that might stem from administering a non-FDA approved drug. For this reason, defendant was given Anafril as a substitute for Depo Provera. Anafril, defendant testified, is an antidepressant medication which also helps control impulse disorders.

After hearing all of the evidence, the Will County circuit court judge ruled that defendant's failure to take Depo Provera was a violation of his conditional release

---

[2]At the time the revocation hearing was held, two years had elapsed since defendant's arrest and defendant had not yet been tried on the Cook County charges. The record provides no explanation for the delay.

and ordered that defendant's release be revoked. The hearing was continued until November 12, 1998, when the court, without receiving any additional evidence, entered a finding that defendant was subject to involuntary admission and in need of mental health services on an inpatient basis. The court ordered that a hold be placed on defendant's Cook County charges so that he could be remanded to the custody of the Department. The court directed the Department to prepare a treatment plan for defendant within 30 days of the date of defendant's return to the Department's custody.

On December 17, 1998, defendant was still in the custody of the Cook County jail when the Will County circuit court held a hearing on defendant's motion to reconsider. Defendant argued that his conditional release should not have been revoked because he had not voluntarily violated the terms of his conditional release. The court rejected the argument, stating that its decision to revoke defendant's conditional release was based on a concern for the public's safety because "what the experts told me is if he's not on medication, he's a danger."

Defendant appealed. Again, he claimed that he did not fail to fulfill the conditions of his release because he did not voluntarily cease taking Depo Provera. On April 6, 2000, the appellate court issued an unpublished order in which it found that the circuit court did not err in finding that defendant's failure to take Depo Provera, though involuntary, was a violation of the terms of his release. Looking to probation revocation cases for guidance, the appellate court ruled that a conditional release could be revoked even though the defendant was not culpable for the violation. The appellate court affirmed the circuit court's order returning defendant to the custody of the Department. We granted defendant's petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

On appeal to this court, defendant contends that the

circuit court erred when it revoked his conditional release because he did not fail to fulfill its terms. In making this claim, defendant initially argues that his release was based on the condition that he not *voluntarily* stop taking Depo Provera. In the alternative, he argues that nonculpable behavior cannot form the basis for a violation of a conditional release. In either case, he contends that, because cessation of the medication was beyond his control, the circuit court erred when it found that he failed to fulfill the terms of the release and revoked it. Defendant also presents a general claim that the court, by revoking his release, violated his due process rights.

After reviewing the record, we find that the circuit court did not err in finding that defendant failed to fulfill the conditions of his release. Nevertheless, we reverse the circuit court's order revoking defendant's release because we find that the circuit court did not adhere to the mandates of section 5—2—4 of the Code (730 ILCS 5/5—2—4 (West 1998)).

When an individual has been acquitted of a crime by reason of insanity, the acquittee's subsequent treatment is governed by section 5—2—4 of the Code. This statutory provision authorizes the involuntary commitment of an insanity acquittee to the Department " 'to treat the individual's mental illness, and at the same time protect him and society from his potential dangerousness.' " *People v. Pastewski*, 164 Ill. 2d 189, 197 (1995), quoting *People v. Williams*, 140 Ill. App. 3d 216, 228 (1986). Our legislature, recognizing that " 'commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection' " (*Foucha v. Louisiana*, 504 U.S. 71, 80, 118 L. Ed. 2d 437, 448, 112 S. Ct. 1780, 1785 (1992), quoting *Jones v. United States*, 463 U.S. 354, 361, 77 L. Ed. 2d 694, 703, 103 S. Ct. 3043, 3048 (1983)), and that grounds for confinement must be established according to constitutionally adequate

procedures (*Foucha v. Louisiana*, 504 U.S. 71, 79, 118 L. Ed. 2d 437, 447-48, 112 S. Ct. 1780, 1785 (1992), citing *Jackson v. Indiana*, 406 U.S. 715, 738, 32 L. Ed. 2d 435, 450-51, 92 S. Ct. 1845, 1853 (1972)), instituted the procedures set forth in section 5—2—4 to ensure that an insanity acquittee's liberty interests are protected.

Section 5—2—4 of the Code promulgates standards for involuntarily committing insanity acquittees, for computing the length of commitment, and for granting a conditional release or discharge. 730 ILCS 5/5—2—4 (West 1998). According to the provisions of section 5—2—4, an insanity acquittee may be committed to the custody of the department only if it is shown, by clear and convincing evidence, that the acquittee is "subject to involuntary commitment" or "in need of mental health services on an inpatient basis." 730 ILCS 5/5—2—4(a)(1)(A), (a)(1)(B) (West 1998). "Subject to involuntary commitment" and "in need of mental health services on an inpatient basis" are terms of art defined in the statute. See 730 ILCS 5/5—2—4(a)(1)(A), (a)(1)(B) (West 1998).

Once an insanity acquittee has been committed to the custody of the Department, he may be detained only as long as he continues to be "subject to involuntary admission" or "in need of [inpatient] mental health services." 730 ILCS 5/5—2—4(b) (West 1998). If, subsequent to initial admission, the court determines by clear and convincing evidence that the insanity acquittee no longer meets this criteria, but is still in need of mental health services, the court shall grant the insanity acquittee a conditional release. 730 ILCS 5/5—2—4(g), (h) (West 1998). " 'Conditional Release' " is defined by the Code as "the release from either the custody of the Department of Human Services or the custody of the Court of a person who has been found not guilty by reason of insanity under such conditions as the Court may impose which

reasonably assure the defendant's satisfactory progress in treatment or habilitation and the safety of the defendant and others." 730 ILCS 5/5—2—4(a)(1)(D) (West 1998). A conditional release "shall be for a period of five years, unless the defendant, the person or facility rendering the treatment, therapy, program or outpatient care, or the State's Attorney petitions the Court for an extension of the conditional release period for an additional three years. Upon receipt of such a petition, the Court shall hold a hearing consistent with the provisions of this paragraph (a) and paragraph (f) of this Section, shall determine whether the defendant should continue to be subject to the terms of conditional release, and shall enter an order either extending the defendant's period of conditional release for a single additional three year period or discharging the defendant. In no event shall the defendant's period of conditional release exceed eight years." 730 ILCS 5/5—2—4(a)(1)(D) (West 1998).

Although the statute does not speak in terms of "revocation" of a conditional release, the statute, in paragraph (i), provides:

"(i) If within the period of the defendant's conditional release, the Court determines, after hearing evidence, that the defendant has not fulfilled the conditions of release, the Court shall order a hearing to be held consistent with the provisions of paragraph (f) and (g) of this Section. At such hearing, if the Court finds that the defendant is subject to involuntary admission or in need of mental health services on an inpatient basis, it shall enter an order remanding him or her to the Department of Human Services or other facility. If the defendant is remanded to the Department of Human Services, he or she shall be placed in a secure setting unless the Court determines that there are compelling reasons that such placement is not necessary. If the Court finds that the defendant continues to be in need of mental health services but not on an inpatient basis, it may modify the conditions of the original release in order to reasonably assure the defendant's

satisfactory progress in treatment and his or her safety and the safety of others. In no event shall such conditional release be longer than eight years. Nothing in this Section shall limit a Court's contempt powers or any other powers of a Court." 730 ILCS 5/5—2—4(i) (West 1998).

As noted, this provision makes reference to paragraph (f) and paragraph (g). Paragraph (f) provides that "the defendant, the facility director, the State's Attorney, and the defendant's attorney" shall be given notice of the time and place of the hearing and that "an impartial examination of the defendant by a psychiatrist or clinical psychologist *** who is not in the employ of the Department" may be ordered upon the request of defense counsel or the State or "if the Court feels it is appropriate." 730 ILCS 5/5—2—4(f) (West 1998). Paragraph (g) requires that the court's findings "be established by clear and convincing evidence," places on the State the burden of proof and the burden of going forward with the evidence if the hearing is being held "to review the determination of the facility director that the defendant should be transferred to a non-secure setting, discharged or conditionally released," and requires that "[t]he evidence shall be presented in open Court with the right of confrontation and cross-examination." 730 ILCS 5/5—2—4(g) (West 1998).

Paragraph (i) of section 5—2—4 of the Code has not previously been interpreted by this court. When interpreting any statute, the primary objective is to ascertain and give effect to the legislature's intent. *People v. Lowe*, 153 Ill. 2d 195, 201 (1992). The most reliable indicator of legislative intent is the language of the statute. *People v. Bole*, 155 Ill. 2d 188, 195 (1993). When legislative intent can be ascertained from the language of the statute, it will be given effect without resorting to other aids for construction. *People v. Lemons*, 191 Ill. 2d 155 (2000). Statutory construction is a question of law. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995); *People v. Savory*, 309 Ill. App. 3d 408, 413 (1999).

According to the plain language of section 5—2—4(i), an insanity acquittee's conditional release is subject to review and revocation if, in the first instance, the circuit court determines, after hearing evidence, that the defendant "has not fulfilled the conditions of release." Once this threshold determination has been made, the court must take further steps to determine whether the conditional release should be terminated and the defendant recommitted.

In his appeal, defendant contends that the circuit court erred when it found that he failed to fulfill the conditions of his release. He further contends that, even if the circuit court was correct when it found that he failed to fulfill the conditions of his release, his conditional release should not have been revoked. We shall consider these arguments separately.

### Failure to Fulfill the Conditions of Release

In the case at bar, the circuit court found that defendant failed to fulfill a condition of his release because defendant was not taking the medication Depo Provera. Initially, defendant takes the position that this finding was error because "the actual condition of [his] release was that he not *voluntarily* stop taking Depo Provera." Defendant contends he could have violated this condition of his release only if he unilaterally refused, ceased, or stopped taking Depo Provera. In this case, however, the evidence presented at the hearing showed that he did not voluntarily cease taking Depo Provera. Thus, defendant contends, the trial court erred when it found that he violated this condition. We disagree.

Defendant's interpretation of the court's conditional release is too narrow. After examining the record and the written order granting the conditional release, we are convinced that defendant's voluntary compliance with the medication order was never a condition of his release. The court's written release order plainly states, "[The

defendant] is to be conditionally released from the custody of [the Department] upon condition that Defendant *** takes Depo Provera." Although the court admonished defendant that he could not refuse to take Depo Provera, we do not interpret the court's comments as evidence that the court intended to make defendant's voluntary compliance a condition of the release. Rather, the record before us indicates that the admonishments were made because the circuit court was aware that defendant had previously been granted a conditional release and, due to health concerns, had chosen to stop taking Depo Provera. Thereafter, defendant had a recurrence of pedophilic behavior. Thus, contrary to defendant's assertion, we find that the court, by advising defendant that he could not refuse to take Depo Provera, was placing defendant on notice that his continued use of Depo Provera was a condition of his release which he could not unilaterally choose to ignore.

In an alternative argument, defendant contends that, even if his continued use of Depo Provera was a condition of his release, his lack of culpability for the failure to take Depo Provera should have precluded a finding that he failed to fulfill the conditions of his release. He argues that the appellate court erred when it applied the rationale employed in probation revocation cases to determine that nonculpable conduct can form the basis for a finding that an insanity acquittee failed to fulfill the conditions of a release.

We, however, agree with the appellate court below that a court may find that an insanity acquittee has failed to fulfill the conditions of a release even if the insanity acquittee bears no personal responsibility for the violation. In reaching this determination, we, like the appellate court, find it appropriate to look to probation revocation cases for guidance.

It has been determined that "[p]ersonal culpability is

not required for a court to revoke a sentence of probation" (*People v. Allegri*, 109 Ill. 2d 309, 314-15 (1985) (insanity defense not cognizable at a probation revocation proceeding); *People v. Cooper*, 146 Ill. App. 3d 596 (1986) (intoxication defense unavailable at probation revocation proceedings)), because a sentence of probation has as its core purposes the rehabilitation of the offender and the protection of the public and, "[w]hen the varied purposes of probation are fully considered, it becomes readily apparent that nonculpable conduct on the part of the probationer may frustrate the goals of a probationary sentence" (*People v. Davis*, 123 Ill. App. 3d 349, 353 (1984) (unavailability of a drug- and alcohol-treatment program that would accept defendant was a violation of the probation order which justified revocation)).

Similarly, when an insanity acquittee is granted a conditional release, the court imposes terms which it deems necessary to "reasonably assure the defendant's satisfactory progress in treatment or habilitation and the safety of the defendant and others." 730 ILCS 5/5—2—4(a)(1)(D) (West 1998). The goals of a conditional release, like the goals of probation, may be frustrated when the conditions are not being fulfilled, even if the insanity acquittee bears no personal culpability for the failure.

In the present case, the trial court granted defendant a release from the custody of the Department and made his continued use of Depo Provera a condition of his release. The record shows that this condition was included because medical testimony linked defendant's treatment with Depo Provera to his continued progress and the safety of the public. Thus, discontinuing use of the medication could have a deleterious effect on the goals of defendant's release. We conclude, therefore, that the unequivocal evidence that defendant was not taking Depo Provera, despite the lack of willful or volitional misconduct on defendant's part, was proof that the condi-

tions of defendant's release were not being fulfilled. Accordingly, we affirm the circuit court's finding that defendant's use of Depo Provera was a condition of his release which was not being fulfilled at the time of the court hearing on the State's petition. By affirming the circuit court's finding that defendant was not fulfilling the conditions of his release, however, our inquiry does not come to a close. We must further consider whether the circuit court's decision to revoke defendant's release was made in accord with statutory procedures.

Revocation of the Conditional Release

Paragraph (i) of section 5—2—4 states in pertinent part:

"(i) If within the period of the defendant's conditional release, the Court determines, after hearing evidence, that the defendant has not fulfilled the conditions of release, the Court shall order a hearing to be held consistent with the provisions of paragraph (f) and (g) of this Section. At such hearing, if the Court finds that the defendant is subject to involuntary admission or in need of mental health services on an inpatient basis, it shall enter an order remanding him or her to the Department of Human Services or other facility." 730 ILCS 5/5—2—4(i) (West 1998).

The plain language of section 5—2—4(i) instructs that a finding that an insanity acquittee has not fulfilled the conditions of release is simply the first step in the inquiry to determine whether a conditional release should be terminated. Pursuant to the language of the statute, revocation of a conditional release does not follow automatically upon a finding that there has been a failure to fulfill a condition of the release. 730 ILCS 5/5—2—4(i) (West 1998). That is to say, failure to fulfill a condition of release is not, by itself, sufficient grounds for a finding that defendant is subject to involuntary recommitment. *People v. Hager*, 253 Ill. App. 3d 37, 42 (1993). Rather, once a threshold finding that a condition

has not been fulfilled is made, a hearing must be held, "consistent with the provisions of paragraphs (f) and (g)" of section 5—2—4, at which time the court must determine whether the insanity acquittee is "subject to involuntary admission" or "in need of mental health services on an inpatient basis." 730 ILCS 5/5—2—4(i) (West 1998). This standard, then, is the touchstone for any commitment of an insanity acquittee, whether initial or otherwise.

When deciding whether an insanity acquittee is "subject to involuntary admission" or "in need of mental health services on an inpatient basis," courts have long held that the determination must be based upon explicit medical opinion regarding the defendant's future conduct and cannot be based upon a mere finding of mental illness. *People v. Robin*, 312 Ill. App. 3d 710 (2000); *People v. Grant*, 295 Ill. App. 3d 750 (1998); *People v. Washington*, 167 Ill. App. 3d 73 (1988); *People v. Smith*, 126 Ill. App. 3d 5, 9 (1984). See also *In re Stephenson*, 67 Ill. 2d 544 (1977) (civil commitment must be based on clear and convincing evidence, including medical testimony). Indeed, it has been recognized that decisions which place a restraint on an insanity acquittee's liberty may violate substantive due process unless they are grounded on professional judgment, "guided and informed by 'normal professional standards.' " *Lucas v. Peters*, 318 Ill. App. 3d 1, 14 (2000), citing *Youngberg v. Romeo*, 457 U.S. 307, 73 L. Ed. 2d 28, 102 S. Ct. 2452 (1982). It has been held that an order of involuntary commitment meets statutory requirements only when the evidence, based on a current evaluation of defendant's conduct and state of mind, clearly establishes the need for inpatient care. *Hager*, 253 Ill. App. 3d at 41; see also *Washington*, 167 Ill. App. 3d at 79, quoting *People v. Bradley*, 22 Ill. App. 3d 1076, 1084 (1974) (order of involuntary commitment requires " 'fresh evaluation' " of individual's conduct and state of mind).

Under section 5—2—4(i) of the Code, then, once it is shown that the insanity acquittee has failed to fulfill the terms of a conditional release, the court must conduct a hearing to reconsider the grant of conditional release and determine whether, in light of expert testimony on defendant's current mental status, there is clear and convincing evidence that defendant's involuntary readmission to the Department is required or whether the conditional release should be continued, with or without modification of the conditions of the original release. 730 ILCS 5/5—2—4(i) (West 1998). These procedures are not precatory. As this court noted in *Radazewski v. Cawley*, 159 Ill. 2d 372, 378 (1994):

"It is well settled that detention of an individual at a mental health care facility implicates a substantial liberty interest. (See *Foucha v. Louisiana* (1992), 504 U.S. 71, 118 L. Ed. 2d 437, 112 S. Ct. 1780; *Jones v. United States* (1983), 463 U.S. 354, 77 L. Ed. 2d 694, 103 S. Ct. 3043; *In re Robinson* (1992), 151 Ill. 2d 126; *In re Splett* (1991), 143 Ill. 2d 225; *People v. Lang* (1986), 113 Ill. 2d 407; *In re Stephenson* (1977), 67 Ill. 2d 544.) Statutes involving involuntary admission procedures are therefore construed narrowly unless such a construction would require 'the performance of an empty formality.' (*In re Splett*, 143 Ill. 2d at 232; see also *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 507.) *** A hearing to vindicate the liberty interest of insanity acquittees is not an empty formality."

Examining the record in the case at bar, it is clear that the circuit court's decision to revoke defendant's conditional release was not made in conformity with the statutory procedures mandated by section 5—2—4 of the Code. There was only one hearing at which the State presented any evidence. The evidence that was entered established that defendant was not taking Depo Provera as required by the court's conditional release order. Based on that evidence alone, the circuit court revoked defendant's conditional release and held that defendant was

"subject to involuntary admission" or "in need of inpatient care." Thus, the court presumed, without any evidence, that without Depo Provera defendant was subject to being involuntarily committed to the custody of the Department. This was error.

The court's decision to revoke the release and recommit defendant was not grounded on clear and convincing evidence that defendant was "subject to involuntary admission" or "in need of mental health services on an inpatient basis." There was no clear and convincing evidence that, *under the circumstances at the time of the hearing*, defendant was mentally ill and, because of his mental illness, reasonably expected to inflict serious physical harm upon himself or another in the near future, or unable to provide for his basic physical needs so as to guard himself from serious harm (730 ILCS 5/5—2—4(a)(1)(A) (West 1998)) or, though not subject to involuntary admission, reasonably expected to inflict serious physical harm upon himself or another and, as a result, would benefit from inpatient care or is in need of inpatient care (730 ILCS 5/5—2—4(a)(1)(B) (West 1998)). These are determinations that cannot be made without the benefit of a current medical evaluation of defendant's mental status. Because the circuit court had before it no evidence regarding defendant's mental condition at the time of the hearing, the decision does not meet the clear and convincing standard and cannot be sustained.

We recognize that the court was aware that in 1996, when defendant's conditional release was granted, defendant's continuation on Depo Provera was instrumental to his treatment and release. However, the court's reliance on that evidence to support defendant's involuntary recommitment is misplaced. The hearing in this matter took place in 1998, two years after defendant was granted the release conditioned on his use of Depo Provera. There was no evidence presented to the court

that, at the time of this hearing, defendant's mental condition could not be successfully treated on an outpatient basis without Depo Provera. Nor was there any way that the court could assess whether defendant's treatment with a substitute medication was adequate to protect him and others from possible dangers stemming from defendant's mental condition. In short, without medical testimony regarding defendant's mental status *at the time of the hearing*, the circuit court could not accurately determine defendant's present need for recommitment and inpatient care or his eligibility for continued conditional release. For this reason, the court's findings that, without Depo Provera, defendant presented a danger to the public and was "subject to involuntary admission" or "in need of inpatient care" were unsupported by clear and convincing evidence.

There is an additional reason why the circuit court's decision to revoke defendant's conditional release was not made in conformity with the statutory procedures mandated by section 5—2—4(i) of the Code. According to this provision, after a court finds that an insanity acquittee has not fulfilled the conditions of a release, the court may revoke the release and recommit the defendant to the custody of the Department if defendant meets the criteria for involuntary admission, or it may continue the conditional release and, if necessary, "modify the conditions of the original release in order to reasonably assure the defendant's satisfactory progress in treatment and his *** safety and the safety of others." 730 ILCS 5/5—2—4(i) (West 1998).

This procedure is similar to the scheme used in deciding whether to grant a probation revocation petition. Paragraph (e) of section 5—6—4 of the Unified Code of Corrections states:

"If the court finds that the offender has violated a condition at any time prior to the expiration or termination of the period, it may continue him on the existing sentence,

with or without modifying or enlarging the conditions, or may impose any other sentence that was available under Section 5—5—3 at the time of initial sentencing." 730 ILCS 5/5—6—4(e) (West 1998).

Due to this similarity, we, once again, consult probation revocation cases for guidance in interpreting section 5—2—4(i) and determining whether the circuit court's decision to revoke defendant's conditional release was proper.

In *People v. Davis*, 123 Ill. App. 3d 349 (1984), the circuit court had revoked a defendant's sentence of probation, which was conditioned on his securing inpatient treatment for drug- and alcohol-dependency problems, when evidence presented at the revocation hearing established that there were no treatment facilities in the state willing to accept the defendant for inpatient treatment. On review, it was found that the court did not abuse its discretion in revoking defendant's probation because "defendant had not achieved and *could not achieve* the principal objective of his probation." (Emphasis added.) *Davis*, 123 Ill. App. 3d at 354.

Similarly, in *People v. Welch*, 78 Ill. App. 3d 184 (1979), the defendant's probation was conditioned on his "treatment at the Illinois Psychiatric Institute" and it was unequivocally established at the revocation hearing that defendant was not receiving treatment. Nevertheless, the reviewing court reversed the order revoking defendant's release because the evidence did not establish that the goal of the probation order *could not be achieved*. This is because defendant testified that he had been turned away by the receptionist at the Psychiatric Institute and, after informing his probation officer of the situation, received no assistance in making treatment arrangements he required. On review, the court said, "[W]ithout attempting to fix blame, it appears to us that the sole objective at this time should be to attempt to

remedy the situation and to obtain the needed treatment for defendant." *Welch*, 78 Ill. App. 3d at 187.

Applying the rationale of *Davis* and *Welch* to the present case, we find that the circuit court's decision to revoke defendant's conditional release did not meet the clear and convincing standard because the evidence relied on by the circuit court failed to establish that terms of defendant's conditional release *could not be achieved*.

Defendant testified that he was willing to take Depo Provera, but that he had been prevented from doing so by prison authorities. Defendant further testified that he had gone as far as obtaining court orders which demanded that prison authorities administer Depo Provera to him. These court orders were ignored, apparently because of liability concerns stemming from the fact that Depo Provera was not FDA approved.

The circuit court made no factual determination regarding the legitimacy of the prison authorities' liability concerns, nor did it attempt to remedy the situation. In sum, the court never determined, by clear and convincing evidence, that the condition of defendant's release, *i.e.*, treatment with Depo Provera, could not be achieved.

We conclude, then, that the statutory clear and convincing standard was not met in the case at bar for two reasons. First, the court failed to determine, based on expert medical testimony, that defendant's use of Depo Provera, to the exclusion of other medications, was necessary to reasonably assure his satisfactory progress in treatment on an outpatient basis and his safety and the safety of others. For that reason, the circuit court's determination that defendant was subject to involuntary admission and in need of inpatient care was not supported by clear and convincing evidence. Second, in light of defendant's testimony that he was being prevented from fulfilling the condition of his release, the circuit

court had an obligation to determine whether the condition could be achieved, that is, it had to determine whether Depo Provera could be made available to defendant. Because the court did not address this matter, its decision to revoke defendant's conditional release and remand him to the custody of the Department did not satisfy the clear and convincing standard.

" 'The primary objective of section 5—2—4 is to insure that insanity acquittees are not indeterminately institutionalized' " (*Turner v. Campagna*, 281 Ill. App. 3d 1090, 1094 (1996), quoting *People v. Winston*, 191 Ill. App. 3d 948, 959 (1989)), and that the intrusion on liberty interests is kept at a minimum. We conclude that, in the present case, the circuit court failed to comply with the procedures and standards required by section 5—2—4 of the Code. Under the circumstances of this case, the defendant's failure to fulfill the conditions of his release—his failure to take Depo Provera—did not provide the circuit court with clear and convincing evidence that defendant was subject to involuntary admission or in need of inpatient care. Nor was there clear and convincing evidence that defendant could not be maintained on an outpatient basis. Because the statutory procedures mandated by section 5—2—4 were not followed, the circuit court erred when it revoked defendant's conditional release.

Defendant makes the additional argument that his due process rights were violated because the circuit court revoked his conditional release without taking into consideration the State's culpability for his failure to fulfill the conditions of his release. We acknowledge that there is a substantive component to the notion of due process which bars arbitrary, wrongful governmental action. *Foucha v. Louisiana*, 504 U.S. 71, 80, 118 L. Ed. 2d 437, 448, 112 S. Ct. 1780, 1785 (1992). However, because we find that the circuit court's decision to revoke

130

defendant's conditional release was not based on clear and convincing evidence and, therefore, did not meet the standard of proof required by statute, we need not consider whether the court's decision to revoke also violated due process.

## CONCLUSION

We agree with the circuit court's finding that defendant failed to fulfill the conditions of his release because he was no longer taking Depo Provera. However, for the reasons stated, we reverse the order revoking defendant's conditional release and remand to the circuit court for further proceedings consistent with this opinion. The judgment of the appellate court, affirming the circuit court's order, is reversed.

*Appellate court judgment reversed;*
*circuit court order reversed;*
*cause remanded.*